AMOS MOORE v. THE STATE.

No. 1627.    Decided April 3, 1912.

**1.—Arson—Charge of Court—Defensive Theory.**

Where, upon trial of arson, the case was tried upon the theory that the house was burned by the defendant at the instigation of the owner for the purpose of obtaining the insurance thereon, the court erred in not submitting the issue to the jury that the defendant must not only have knowledge that the building was insured, but it must be shown that the defendant was guilty of burning the house in order that the insurance might be obtained.

**2.—Same—Secondary Evidence—Insurance Policy—Rebuttal.**

Where, upon trial of arson, the case was tried on the theory that the alleged house was burned for the purpose of obtaining the insurance on it, it was reversible error to show by oral testimony that the house was insured against fire without accounting for the absence of the insurance policies, although the defendant introduced evidence in rebuttal to meet this phase of the case.

**3.—Same—Charge of Court—Principals.**

Where the court gave a general definition of the law of principals, but did not apply it to the facts in submitting this issue, the same was error.

Appeal from the District Court of Bowie. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of arson; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Hart, Mahaffey & Thomas,* for appellant.—On the question of the court's charge on principals: Knowles v. State, 27 Texas Crim. App., 503.

On the question of the court's charge: Tracy v. State, 27 Texas Crim. App., 496; Sanders v. State, 38 Texas Crim. Rep., 343.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment charges appellant with arson in that he set fire to and burned a house belonging to B. C. Pharr, in the city of Texarkana, near other houses, and being insured, and so located that the firing and burning of the same endangered the lives and properties of others.

The case was tried upon the theory entirely that the house was burned for the purpose of obtaining the insurance on it. The evidence shows that the house belonged to B. C. Pharr, and appellant was his employee at his wood yard, which was some distance from the burned residence. The theory of the State was that appellant, at the instigation of Mrs. Pharr, burned the house, and many questions were asked and rigid examination made of witnesses by which it was sought to show that some of the contents of the house had been removed shortly before it was burned. The State further offered evidence to the effect that defendant and one Mary Williams were at the house shortly before the burning occurred, at least shortly before the fire was discovered which destroyed the house. There seems to have been no attempt to connect Mrs. Pharr with instigating appellant to burn the house. The house was insured for something like three thousand dollars. The value of the house and contents as shown by the evidence varied. Pharr testified the house cost him about $3,200, and the contents and house were worth something over $5,000. He received about $2,800 from the insurance companies. He estimated his clear loss as being about $2,500. The house was rather handsomely furnished, at least, far above the average in furniture and rugs, and dining room appointments. Appellant had no interest in the insurance. He was a negro employee about the wood yard, and had no interest in the property. Upon this theory, and this was the theory upon which the case was submitted, appellant could only be held responsible for burning the house for the benefit of Mr. Pharr to the end that Mr. Pharr might receive the insurance. After the fire Mrs. Pharr and appellant were arrested. Appellant was held to await prosecution, and Mrs. Pharr discharged, and no further proceedings were had against her. (The writer wants to add that under the testimony for the State he does not understand how it was that Mrs. Pharr could have been connected with this transaction.) As before stated, the State did not undertake to connect Mr. Pharr with the burning or offering any inducement to appellant to burn the house. The submission of the case being confined to the proposition that the house was burned to obtain the

insurance, it was, therefore, necessary to show defendant was induced to burn the house that the insured party might be benefitted.

1. Appellant requested the court to charge the jury that before they could convict on the theory on which it was submitted, that there must be some evidence to show that appellant at least knew that the building was insured at the time it was burned. The court was in error in not charging this phase of the law. And not only so, but the court should have gone further and charged the jury in this connection, that simple knowledge of the fact that the house was insured was not sufficient. We do not believe that knowledge alone would have been sufficient. Burning a house which is insured applies under the statute to the owner. If the owner burned the house, or had it burned, in order that he might get the insurance, he would be guilty. If he employed some one else to burn the house in order that he might get the insurance, then both he and that agent would be guilty. The charge upon another trial should submit this theory of the law; and while upon this subject it may be well enough to state that before they could convict appellant under the theory upon which this case was submitted, it must be shown beyond a reasonable doubt that he was guilty of burning the house in order that the insurance might be obtained. These observations are made in view of the fact that the court confined this case to the consideration by the jury of the fact that the house was burned to obtain the insurance. The other features of the indictment were not submitted to the jury, that is, that the house being in a town and so located near other houses that the firing and burning of the same endangered the lives and properties of others, etc.

2. The witness Watts, first witness introduced by the State, testified that he was a fire insurance agent employed by the Fire Insurance Agency of F. W. Offenhauser & Company, in Texarkana, and was so employed at the time of and prior to the burning of the house mentioned in the indictment. He was then asked the question whether or not the house was insured. Appellant interposed various objections for the reason that the same was immaterial and irrelevant; that the policy or policies of insurance, if any, would be the best evidence, and that no predicate had been laid for the introduction of secondary evidence. Thereupon the witness was asked whether or not he had the policies. He answered this question in the negative, and stated that they had either been returned to the home office of the companies, or to the general office in Dallas, but he did not know which. Thereupon, the court overruled the objections of defendant and permitted the witness to testify that the time of said fire said house was insured in two insurance companies (giving the names of the companies), the aggregate amount being twenty-eight hundred dollars. The objections were all overruled, and that testimony went before the jury. The court qualifies this bill by stating, that the defendant introduced B. C. Pharr as a witness, and he testified on direct examination in full as to the value of the house destroyed, and household goods destroyed, the

amount of each policy thereon, dates of policies, amounts, by whom issued, and the amount of his loss over the amounts of the policies, and the amount he collected on the policies, as shown by the statement of facts. With this explanation the bill is approved. The explanation of the court rather intensifies the error. These policies were not forthcoming at the trial. For this reason the objections were urged to the introduction of secondary testimony. They were not at the insurance company's offices in Texarkana, as stated by Watts. They had been sent away to some other office. It was not shown these papers could not have been by proper diligence produced. The testimony of Watts was erroneously admitted, and the fact that the witness Pharr subsequently testified for the defendant in the case did not cure the error in originally admitting the evidence of the witness Watts. No rule seems to be better established than the one that where testimony has been erroneously admitted, and the defendant is thereby called upon to meet such testimony, that the fact that he does introduce evidence to meet it does not cure the error. That ought to be considerd as elementary.

3. The court gave a sort of general definition of principals but did not apply it to the facts in submitting the issues to the jury. Upon another trial this trouble will be avoided by giving a pertinent application of the law of principals to the facts.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*